My name is Steve Dietrich. I'm the Assistant Attorney General representing the Appellant State of Washington in this case. I'd like to reserve seven minutes for rebuttal, please. The State is here today asking you to vacate the judgment entered by the trial court and send the matter back with directions to enter judgment for the State the full amount of our proven damages of $861,000, plus the calculation of pre-judgment interest. Today, I'd like to address the two substantive legal errors that the court made with respect to the affirmative defense that Sea Coast Towing was trying to prove. The first is that, if I could back up, the purpose of the bench trial in this case was twofold. It was to determine the amount of damages suffered when the bridge was struck by the tugboat, and it was also to determine whether or not Sea Coast Towing, the owner of the tug, was entitled to limit its liability to the value of the tug. And this is based on a maritime statute, 46 U.S.C. 183, that allows an owner who ordinarily would have been responsible because the tug was being operated by an employee of Sea Coast within the terms and conditions of his employment when the crash occurred. Ordinarily, and in virtually every other realm, the owner would have been liable for that damages now. In the seagoing arena, the owner has the availability of this sort of unusual limitation of liability statute. The proceedings, though, are – have a bifurcated burden of proof. First, the claimant, in this case the State, is required to prove the cause, the negligent act or the – that caused the loss. We did that. The judge found in this case that the loss was caused when the captain fell asleep at the helm, failed to steer the boat, and the boat crashed into the bridge. At that point, the burden shifted to Sea Coast to show that they were not – the statute uses the words privity and knowledge, that they had lacked privity and knowledge of that established cause. Privity and knowledge is a fault concept. It has nothing to do with causation. Sea Coast intended to do that by showing that it wasn't responsible for the fact that the captain fell asleep. And it tried to do that first by showing that they were in compliance with Coast Guard work hour regulations. The Coast Guard has a rule that says people who work on these sorts of boats can only work no more than 12 hours within a 24-hour period. The obvious purpose of that rule is to make sure that the crew that are navigating these boats are well rested and able to do their jobs. If you look at the pretrial order in this case, which was – which is in the record at page 190 in the excerpts of record, Sea Coast says going into the trial that one of their factual contentions on which they bear the burden of proof is that they're going to show that their captain was in compliance with the work hour regulation. At trial, they tried to do that. After trial, the Court found in his findings and conclusions that the State – and he says this explicitly – the State proved all its damages, proved all these instances of negligence, proved that there was a negligent act that caused the collision. But the Court says at page ER – and this is in the record at 693 – its findings of fact 27 and 28. The Court says the State is not entitled to its whole amount of damages because it failed to prove that the employee was in violation of the 12-hour work rule. Now, that is an absolute legal error that runs contrary to several cases in this circuit and virtually every case from every other circuit that I could locate. And the reason is, is because the trial judge is holding us to prove an extra cause or another cause or cause that's directly attributable to the owner, and that is not what the Limitation of Liability Statute contemplates. In fact, I want to cite the Court to a case that was cited in the response brief but that we didn't bring up in our opening brief and we should have, and that's the Silver Palms case, 94F second 776 at page 777. It's a 1937 case from this circuit. And in that case, the Court explicitly rejects the argument that's being made here by Seacoast. And it says that the claimant is not responsible to prove a cause for which the owner is at fault. The claimant is only responsible for proving a negligent act or condition of seaworthiness, of unseaworthiness. The burden then shifts to the owner to prove the lack of fault. And that's the situation in every published decision that I can find. And it's not surprising because that's the exact language that the statute uses. It says the owner has the burden. The owner must show the absence of privity and knowledge or fault. That error was extremely damaging to the State's case because, as I said, going into the trial, the understanding based on the pretrial order, based on the pretrial statement that Seacoast submitted, was that they bore the burden on that particular issue regarding the 12-hour work rule compliance. It's also particularly damaging because, as the Court explicitly finds in those same findings, number 27 and 28, the evidence regarding compliance with the 12-hour work rule was conflicting. The captain testified to one thing at the deposition. He testified slightly differently at trial. The logs, which the captain testified and the company policy required, were the only means from which anyone could determine who was actually on watch, whether or not they were in compliance with the 12-hour rule, were not kept in a manner that was consistent with company policy, from which an outsider could evaluate whether or not there was compliance with this rule at any particular time. The trial judge found that all that was negligent behavior on the part of Seacoast, and he notes that one of the reasons we can't figure out whether there was compliance with the 12-hour rule is because of the poor record-keeping practices and the fact that Seacoast failed to require appropriate logs and failed to monitor the captain's record-keeping requirements. So, and it's appropriate, it seems, particularly in this case, to hold Seacoast to that standard of proof. There's no way that the maintenance of the logs is clearly within their management purview. They should have been monitoring those things. They should have known that they weren't being kept in a way from which one could determine compliance. It's clearly, it's something the State can't, after the fact, go back and recreate. And certainly the court, this Court should not adopt a rule that encourages companies to take this sort of head-in-the-sand approach, that encourages them to avoid doing the record-keeping, avoid doing the kinds of things that would lead to a seaworthy vessel, with the obvious result that it becomes harder to prove their fault at a subsequent trial. So if there are no questions on that particular topic, I'd like to move to the second substantive error that we perceive in this order, and that is that the trial court fails to hold Seacoast to its standard of reasonable diligence. The cases in which we have cited to you all seem to make it pretty clear that an owner, if he wants to limit liability, must show that he or she did everything reasonably prudent to provide a seaworthy vessel before the ship left the dock. In this case, the condition of unseaworthiness that we're alleging is that they have a chronically fatigued crew based on the company habits and practices of not enforcing these work-hour regulations. But that didn't cause the accident, though, did it? The captain fell asleep. So the rest of the crew could have been terribly inadequate. It wouldn't have made any difference, would it? Well, that's true. The captain fell asleep. These rules are designed to – they apply to the captain, too. He's only supposed to be on watch 12 hours a day. You're still talking about the captain and why he fell asleep, I guess. That's right. That's right. Well, and maybe I should address that. I mean, there seems to be an argument from Seacoast that we needed to prove why he fell asleep and that it wasn't enough. Exactly what they're arguing. That is what they're arguing. That is what they're arguing. We don't think that's the – that's not the issue. We proved – the cases all say the claimant must prove the cause of the accident with as much specificity as they're able to establish. In this case, we established that there was a navigational error, and that navigational error was caused by the fellow falling asleep. Now, they need to prove at that point they're not responsible for the fact that he fell asleep. The way they tried to do that was to try to show that they were in compliance with the workout regulations, that he wasn't overworked at the time of the accident, so on and so forth. That's – if you look at their pretrial statement, if you look at the pretrial order, that's what everybody anticipated going into the trial. That's a very good argument. You made a good argument. And then you say there's this other argument. Okay. The other argument is that the court failed to address the duty of reasonable diligence that the company had. The court seems to think at one point – and we cited you to this finding of fact – that the company lacks privity and knowledge of this cause unless it knew that the captain was asleep when the crash occurred. And we think that based on all the cases that we've cited to you, that is an absurdly narrow definition of their diligence standard. And the cases all say when there are instances where you can show that a crew made a mistake because of fatigue, because of illness, because of all these sorts of things, that the duty is on the company to ensure that it has a fit crew when it leaves the dock. And obviously they had no way of knowing that the guy was asleep for the two minutes before he crashed into the bridge. And if that's the standard, the company would always be absolved in these fatigue cases. That's simply not the case. They try to characterize this – there's a whole line of cases or a whole collection of cases where there's an accident caused by what the court calls a spontaneous navigational error. And in those cases where the company's provided all the tools, the training, they have competent mariners on board, and the person makes a mistake while it's out at sea, most of those cases say the company's not responsible for that and they're entitled to limit their liability. Now, there's an attack on those cases where the claimants show, well, look, the reason that this spontaneous navigational error occurred is because the crew was too fatigued. The crew was too fatigued because the business practices of the company encouraged that and actually lead to that condition. All of those cases – there's one out of a district court in Oregon called Souse. There's one called Armature. It's also a district court case. All of those cases say – deny the limitational liability in that setting, where the company hasn't developed policies to prevent this sort of fatigue or this sort of poor condition of the crew that leads to the accident. All of them deny limitational liability in those circumstances. We think that that is the appropriate analysis that should have went into this case. Certainly the standard that they had to know that the fellow was sleeping was not – is way too narrow, not consistent with the jurisprudence. That would require for the owner ever to be liable to know exactly what is going on in the ship that they're not on, so it does seem absurd. Oh, that's right. Well, that's right. And they're not – and we concede they're not required to know exactly what's going on. But when they have a pattern in practice and a set of work rules and company policies that are inevitably going to lead to fatigue and overworked crews, they are all the cases that I've been able to find. They're not entitled to limit their liability in those circumstances. So I'd like to reserve the rest of my time for rebuttal. May it please the Court. My name is Jay Betzeff. I represent Seacoast Towing in this matter. There's a fundamental problem with the plaintiff's argument in this case. They never established that Captain Chost was fatigued or that he was fatigued from overwork. But why is that their burden? They established he fell asleep, and that was the cause of the accident. Exactly. Yes, Your Honor. That was established, and that was what the trial court found. In those circumstances, the burden on the defendant then, because there's not the predicate factors proven about why he fell asleep, and if you read Carr or Western Pioneer out of this court, this case, when you prove a general proposition that he fell asleep or that he was negligent, you don't get to assume that all the possible causes of him falling asleep are true and that they did, in fact, do it. And the defendant then has the burden to disprove each one of those causative factors. It, as Carr states, is the specificity of the plaintiff's proof which determines the defendant's burden of proof at trial to disprove privity and knowledge. So if you can get more specific proof, if the plaintiff can prove more specific, like the captain fell asleep because he was overworked or the captain fell asleep because he was ill and he was ill because he was overworked. But who has the knowledge of why he fell? Who is best positioned to know why the captain fell asleep? Quite frankly, the captain would be in the best position to know why he fell asleep. And the company he works for. The company he works for only to the extent that the captain informs him. I'm falling asleep now? Well, no. Or he calls up the dispatcher and says, I'm tired. I need to take a break, so I'm going to tie up to a buoy and relax. Or he calls the company to inform them that my condition of overwork, I need to stop. But you have to establish. Well, I'm just thinking about the Exxon Valdez case. You know, I'm supposed to call the company and say, I am drunk. Well, in that respect, they proved he was drunk. Now, if they could go through the record and find evidence from the company that the company knew he was intoxicated from their records, then there is no right to limit liability because they have privity knowledge that they have a captain who's got a drinking problem. Their theory is that the owner knew. There's evidence in the record that supports that survey from the workers that they were maintaining conditions that would probably or inevitably create fatigue in their key people. That assumes, though, that that condition existed on the day of the accident, and there's just no proof that there was any condition that the surveys were anonymous surveys discussing all the runs and seacoast towing. They could have been oil barges. They didn't necessarily relate strictly to gravel barges. They didn't specifically relate to Captain Chose and how Captain Chose managed his vessels. And they were also admitted they didn't prove the matter that there was actually tired crews because they were admitted as not of the truth of the matter asserted. So you can't rely on those statements alone to establish that there was a condition on the seacoast towing vessel on that day that said the captain or the crew was fatigued. And that's the key point of this. As you see the party's obligations, once the state proved that the captain was asleep at the time of the accident, if you had simply put on no proof at all about anything, you win? No. The burden of proof at that point, because it's an error by the captain at sea, without any predicate causation, causative factors established, means that we have to put on evidence that Captain Chose was confident when hired, had a safety record that was good, and that the crew was adequate, the crew was confident, and the vessel was properly equipped. In this case, that was done. The trial court found that. The State has not objected to that on appeal. The issue. But you had no duty beyond that, as you see it, to put on any evidence about the cause of the collision beyond the fact that he was asleep. That's correct. But we didn't have to put on any evidence of causation because that's not our burden. The burden of causation is on the State or the plaintiff making the claim. But once you show a fit ship and crew, then you're done. Then we're done for that point. If the State had gone through and managed to prove, say, a 12-hour violation, the 12-hour violation under the Pennsylvania rule would have been a causative factor that we would have had to disprove knowledge of the 12-hour violation. Arguably, that would have been harder to do. There may be some arguments, but it probably wouldn't have succeeded. But the reason they couldn't prove the 12-hour violation was because of your faulty records, that you weren't keeping track of who was there and how long they had worked and what part of their work was counted and what part of their work wasn't counted. And there's actually. That does create an incentive. I mean, is that the policy we really want? No, it's not the policy you really want. But that's more of a legislative question because there's actually no record-keeping rules mandated by the Coast Guard. The law-keeping practices are actually not a legal obligation. It's a company voluntary policy, not a legal obligation. So they can do it. Generally, on a vessel, a captain has control of the watch schedule. He is the person who has control of who sets watch, what work hours of the people are going to work. Captains are informed of the watch schedule, informed of the 12-hour rule, and all of them know about the 12-hour rule. They're required to maintain that 12-hour rule. Who was it that, between the parties, who raised first proof of the 12-hour rule, whether it was violated or followed? It was actually the plaintiffs, Your Honor, because they were hoping to take advantage of what's called the Pennsylvania rule in maritime law, which says if you have a statute that is violated, a regulation that is violated, a safety regulation that is violated, you have an automatic assumption of causation that that violation caused the accident. It's an almost impossible burden for the defendant in those cases to overcome. It would have been clear liability, and we would have had to disprove knowledge of a 12-hour violation, which, again, would be difficult given some of the evidence at trial. So the State is the one that delved into the 12-hour facts first? Yes, Your Honor. In fact, Seacoast Time would never have brought it up except for the idea of the Pennsylvania  rule. And which the 12-hour rule, this is the main stress of the plaintiff's argument is that we should have had to prove the 12-hour rule or disprove knowledge of the 12-hour rule. But they never proved enough facts to make the 12-hour rule relevant. They never proved that it was a cause of the accident, as we discussed. They also never proved, and it would be relevant if they had a fact, if this Court had said that Captain Chost fell asleep because he was overworked, and this was not a finding of fact. It was not anywhere in the record. The State has not objected to it. They could have then pointed to the 12-hour rule and said, your compliance issues with the 12-hour rule prove privity and knowledge. That probably would have been a correct finding. But since they didn't prove he was overworked, and as the Carr and the Western Pioneer cases pretty well articulate, that is their duty. They have to prove the causative factors. And you can see this through, and the fact is they could have done this. They could have presented testimony about Captain Chost's work hours based on his own testimony at deposition, based on his interpretation of the logs. It was possible to make a determination of Captain Chost's work hours. They just couldn't do it to their satisfaction and didn't do it quickly enough, as I'll discuss in a minute, regarding Dr. Watson's testimony. But if you look at the armature case, which is cited by the plaintiff, that shows the way a limitation proceeding could go. You have a negligence act, a negligence act by the Captain. He did that negligence act because he was tired. He did that because he was ill. And he did that because he was ill because he worked excessive hours by the company. Those are the causative factors. And since those are causative factors, the burden is on the defendant. Or, sorry, excuse me, the plaintiff. It's the same with the unseaworthy issue. The unseaworthy condition has to be established as a causal factor in the collision. You just can't point to every potentially unseaworthy condition and assume that all of them occurred. You have to isolate it to the exact one. And there's no legal – this is the plaintiff's claim – no legal authority that says you get to assume unseaworthy condition. You just point to the exact one that's required. Well, what is the – this is one part of the district court's order that I just started looking at in a slightly different way. The court says that the proximate cause of the elision was Captain Yost falling asleep and thereby failing to maintain a proper lookout. So is the failure to maintain a proper lookout the cause? I mean, if Captain Yost fell asleep and someone else was maintaining a proper lookout, his falling asleep would be irrelevant. Exactly, Your Honor. And that's really what we're talking about in terms of the specificity of proof. You prove the first action that he was negligent, and you prove that he was negligent because he failed to keep watch as he was supposed to. And he did that because he fell asleep. And that's what the – So why isn't that sufficient? I mean, there wasn't a proper lookout, and the reason was he fell asleep. Because there's no indication of why he fell asleep. And this is the crux of the argument, is you have to prove – Seiko's towing shouldn't be punished just because Mario Chos could fall asleep for a variety of reasons. If he had gone to bed late the night before – You're not being punished. You're being asked to compensate – Excuse me. For the damages to the damage to your right. Excuse me. You're right. I'm not being able to take advantage of a legal right. I apologize. Mario Chos could have fallen asleep because he didn't get enough sleep the night before, or he didn't get a full night's sleep or a good night's rest sleep. That wouldn't be within the purview of either the 12-hour rule or any other factor that Seiko's towing would have known about. Mario Chos is not going to call up Seiko's towing and say, I didn't get a good night's sleep. And that's the issue, is that there's several potential causes of why he fell asleep. To select one would be just speculation at this point, given the evidence of trial. And so we go to the case law of Waterman Steamship and others, where you have a spontaneous error in terms of spontaneous, since there's no predicate leading up to it, that all you have to do is prove a competent crew, a competent captain, and a properly equipped vessel. Again, the lawkeeping practices and the interpretation of the manual, there's been no evidence that links those causally to the accident. As the trial court found, they did not cause the accident specifically. If you'd like a citation, I can get it for you, but I don't actually have the page numbers right in front of me. This is defining the fact that he specifically said that the failure to keep logs as proper as voluntary was not an actual cause of the accident. Without proper causation, there's no reason for Seiko's towing to correct those errors at this point. Or let me rephrase that. They have an obligation to correct those errors, but State of Washington cannot collect damages based on those errors because they didn't relate to the accident at hand. Suppose that there had been a stipulation that the accident or the collision was the result of negligence by the barge and the owners. And that's all. Then what would the owners do to try to get themselves their limited liability? Would the plaintiff have to go farther than simply extracting, say,  Yes, Your Honor. I think Western Pioneer is very clear on that factor. In Western Pioneer case, it's decided by this case. And so the question we have is how far do you go? How far must a plaintiff go in this chain of causation? Where does the plaintiff get to stop and say now? The plaintiff gets to stop when they can establish a cause in which the defendant has privy knowledge. And that's the... They can establish the what? Sorry. The plaintiff gets to stop whenever they can establish a cause. A cause. Of the chain of causation in which the defendant has privity and knowledge of. The defendant has what? Privity and knowledge of. Privity and knowledge of. The standard within which the Limitation of Liability Act returns. If the defendant has some knowledge or should have had some knowledge of the accident or that cause, then they're responsible for that cause. If you read the armature case, you can see that chain. The chain of causation was an accident caused by tiredness due to illness due to overwork. And they proved that at the end stage, the overwork, the schedule of the crew was set by the company. And therefore, they knew that they were working in inhumane schedules, should have known the effects of those later, and were not allowed to limit liability. Quite frankly, that's not the case before us. They only have the first steps or the first two steps, which is a general. He fell asleep. And. It seems that he has, the district court has a finding, number 27, that says that the court finds that plaintiff did not prove by a preponderance of the evidence that Captain Kiosk violated the 12-hour work limitation in the 48 hours preceding the elision. That seems to imply that if Captain Kiosk had violated the 12-hour work limitation in the 48 hours, then the company would be in privity or knowledge. Absolutely, Your Honor. And you agree with that? I would agree with that. If they had been able to establish a violation, that would have proved causation. It would have proved that a violation of the 12-hour rule caused the accident. So that means you don't need to go looking into the reasons he fell asleep if the violation alone is sufficient. In that instance. But since they couldn't establish. Here. Sorry. Yes, that's correct. For that, for the 12-hour violation, twiddling the 12-hour violation alone would have established causation, which would have then led to privity and knowledge given the evidence of trial. But since they couldn't establish a violation, and that occurs because of the Pennsylvania 12-hour rule, which was what the plaintiffs argued at trial, is that you get to assume causation given the violation of the standard. So it really does come down to who has the burden of proof on whether the 12-hour rule was violated in that 48-hour period? To the extent that, yes. To some extent. Although I, as SECO's position, that that turns on proof of the evidence of causation. If you had accurate records at the time, then we would know whether the violation occurred or didn't occur. Yes, Your Honor. And actually, that's not entirely correct. The trial court didn't find that it could not establish. It found it could not establish a violation. It didn't find that it could establish that we were in compliance. It just said that the records were. It said that the facts were in dispute due in part to your lack of records. But that, it didn't go a step further and say, well, and clearly they, we can say that they were not in dispute. You're right, Your Honor. It is a burden of proof issue in that instance. But that's an instance of causation. It's also a question of, it could have been relevant in other matters. The fact, the law-keeping practices and whether a violation of the 12-hour rule could have been relevant if they had proven that Myron Shost was overworked. But since they didn't, there isn't. They didn't have to prove why he was asleep, just the violation. Yes, Your Honor. But that whole argument about it could have been drugs or medicine or alcohol is kind of a red herring, isn't it? Well, no, Your Honor, because if they couldn't prove, say that we could have proved compliance with the 12-hour rule, that still wouldn't have eliminated our duty. They could have proved another causation, another causative factor. If we had approved that Myron Shost only slept 11 hours, they still could have presented evidence. But that's a lot harder thing to prove, either by you or the plaintiff, in simply proving a violation of the 12-hour rule. That's correct, Your Honor. It is a lot harder. It would be more difficult to prove. This is the easy avenue. It was the easy avenue, and that was the one the State took. And quite frankly, in their reply brief, they mentioned that they were surprised their expert couldn't testify that there was a 12-hour violation, which is what they expected the testimony to be at trial. And that's why they had to get Dr. Watson, who was their expert, that was excluded because of late disclosure, which is not an abuse of discretion. Well, following that, I guess the company says, well, he didn't fall asleep because we worked him too hard. And then the plaintiff was saying, well, okay, but what else would have caused him to fall asleep that you didn't have anything to do with? Do you know whether he was taking too much medication? Do you know? And then the list starts to grow. Exactly, Your Honor. And that's the problem with putting the burden of proof on the defendant is because you're now making the assumption to find liability just based on the fact that he fell asleep. Of course, it's the defendant that wants to get away from or wants to get his liability limited. Right. So the defendant is trying to say, well, the most logical reason for him to fall asleep, I guess, would be if he were overworked. So let's prove we didn't overwork him. And then the plaintiff said, well, that doesn't have anything to do with that just shows that he didn't fall asleep for that reason. Right. It doesn't show that he didn't fall asleep for some other reason. You had somebody, a vice president of the company, kept him out all night, the night before or something or other. And those would be valid reasons. And that's those have to be established by the plaintiff. Because if you don't establish by the plaintiff, you're assuming him. I don't think I'm following your question. No. It's really hard to articulate it once you say you have to prove some cause. The plaintiff has to prove some cause beyond the falling asleep. You have to prove or contend or make an allegation of the reason why he fell asleep. And then I guess you then have to prove what that was to establish that's why he fell asleep. And then the company would say, yeah, but we didn't know he was out with the vice president that night or something or other. Exactly, Your Honor. And that would be the Seacoast's argument on appeal is that you prove you have to prove a specific cause of a general cause. I guess to a point where the owner can then show he didn't know anything about that particular reason. That particular cause. And that's how most court law establishes. You establish the burdens of proof or the causation and the plaintiff has the burden to establish what caused the accident. Thank you very much. Thank you, counsel. May it please the Court. In rebuttal, to get back to this notion that the State brought up the 12-hour rule and it was the State's intention to prove their case by proving the 12-hour rule, all Your Honors need to do is go look at the pretrial statements of the parties and look at the pretrial order that was entered by Judge Seelig. The only reference to the 12-hour rule is in Seacoast's pretrial statement where they list it as one of their factual contentions that they're going to prove. Now, the reason, I mean, there's a different story now. But at trial, it's obvious the reason they were trying to do that is, as Your Honor said, they're trying to show, okay, the guy fell asleep. He was – I think it's logical that he was too tired. I don't think that's a big leap in logic here. They were trying to show that they're not responsible for that because they weren't overworking him at the time of the accident. That was what they were trying to do. Now, it didn't work out for him. The Court didn't find that. He found that the evidence was conflicting and hopelessly confused. And if – this is the whole – this is our whole argument. If the judge had got the burden of proof right, that should have meant we win, we get our entire damages. That should have been the end of the story. Now, what they would say – I mean, even if we had been trying to prove the 12-hour work violation, and even if we'd done that, they would next say, well, gee, we didn't know he was in noncompliance with the 12-hour work rule at that time. So how can we be responsible for that? Your Honor, the district court seems to have thought that that was your burden, that based on all the evidence, the Court finds the plaintiff has failed – plaintiff has failed to prove by preponderance of the evidence that the captain violated the 12-hour work limitation. So the district court thought that was your burden. That's right, Your Honor, and that's what we contend is the legal error. I mean, if you look at the Court's pretrial statement, it clearly recognizes that it was Seacoast's burden on the 12-hour rule. It was a bench trial. Now, the only issue is there should be no discussion of the State's burden in the findings and conclusions except with respect to the amount of damages. We had – we had filed a summary judgment, which was essentially an opposed, and that established that there had been an act of negligence that caused the loss. That was the captain falling asleep. That is reiterated in finding of fact number nine in the Court's findings and conclusions. The only issues for the bench trial was how much damages were there. Seacoast had contended that we were exaggerating the amount of damages to the bridge and that some things weren't compensable. We clearly had the burden on all those issues, and the Court found that we satisfied that burden because he found in our favor on each one of those damage issues. The other main issue at trial was whether Seacoast was entitled to their affirmative defense, this limitation of liability. There should be no discussion – there should have been no issues of causation. There should have been no discussion about causation. There was no need to invoke the Pennsylvania rule, which is simply a causation rule. And it's clear that the Court just got – I believe just got confused because being a bench trial, there was witnesses being taken out of order. There was also the typical things that go on in a bench trial. And, you know, it's my belief that the Court, when it got to writing the findings and conclusions, simply got confused where they were in the analysis. Is that statement of the burden, as you see it, consistent with Carr? Oh, it is indeed. In Carr, the accident was caused by – the parties stipulated that there was an unspecified condition of unseaworthiness that caused the accident. It looks like it was some sort of mechanical failure. The Carr defendants, as Seacoast is doing here, argued, well, gee, we don't know what caused the ship to sink, and we can't go and disprove every potential cause. So all we've got to do to show that we're entitled to limit our liability is show that we did the usual surveys, we did all the sorts of diligent – things that a diligent owner would do to make sure that they've got a mechanically competent vessel. And the claimant in that case was unable to show which one of the components actually broke or to show any other more specific cause. So the court said, if that's the scenario and there's only this general vague finding on seaworthiness, then they can rebut that by coming in and showing that they did everything they needed to do to provide a seaworthy vessel. Similarly, in this Western Bowfin – or Western Pioneer case we've cited as Bowfin, that was a spontaneous navigational error case. The captain made a – ran into something, made an error. The plaintiff – or the claimant in that case tried to argue that the captain's navigational error was caused by fatigue. The trial court found that that wasn't proven in that case, and so the court said, all we have is a navigational error, we don't know what caused it. And so it's sufficient for the owner to show that they had a competent and well-trained crew and all those sorts of things, and that they had all the equipment that they needed. Well, we've gone one step beyond Carr and one step beyond the Pioneer or Bowfin case. We've showed that there was a navigation error, and we showed why the navigation error happened. What did you show about what the owner knew? Was the end that you win at that point? It's not our burden to show what the owner knew. In most cases, if you show that an employee acting within the scope of his – I mean, you win because you showed negligence and causation. So you win. Other than limitation of liability, that's a different issue, because that $870,000 is just a number unless you can collect it from somebody. Right. So who has the burden of keeping the owner from limiting liability? The owner has the burden of showing that the cause that the claimant proved was not his fault, was not the owner's fault. And that all makes sense when you look at what the pretrial order and going into trial, what we thought it was going to work. They thought they were going to do that by showing that they were in compliance with the work hour regulations at the time of the crash. And so if the captain fell asleep, it wasn't their fault. It wasn't because they'd overworked them, because they were working within the regulations. Now, they were unable to – they didn't get past that threshold. They failed in their proof. And so we contend that it had Judge Zilley not confused the burden there. The other findings should lead inexorably to a judgment entered in the State's favor in the full amount of our damages plus a prejudgment interest. So unless there are questions, I'll sit down now. Thank you. Thank you. Thank you, counsel. Washington State Department of Transportation v. Seacoast Towing Inc. is submitted. And we're going to take a five-minute break while everybody gets set up here. Thank you. All rise. This is a 4 p.m. recess for five minutes. Thank you.
judges: Thompson, T. Nelson, Wardlaw